COMMONWEALTH *vs.* WAYNE F. CROSS.

Worcester.    January 12, 1976. — January 30, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Practice, Criminal,* Assistance of counsel.  *Constitutional Law,* Assistance of counsel.

There was no merit in a criminal defendant's contention that he was denied effective assistance of counsel by the fact that defense counsel did not move to suppress a witness's in-court identification, her out-of-court identification, or a gun seized from the defendant. [56-58]

INDICTMENTS found and returned in the Superior Court on June 22, 1973.

The case was tried before *Moriarty, J.*

*Stephen R. Morse* for the defendant.

*John M. O'Connor,* Assistant District Attorney, for the Commonwealth.

GOODMAN, J.   The defendant appeals pursuant to G. L.
c. 278, §§ 33A-33G, from convictions of assault with a dan-
gerous weapon with intent to rob and of assault and bat-
tery by means of a dangerous weapon. At some time before
two o'clock on the afternoon of April 2, 1973, a man en-
tered the office in which Mrs. Barbara Macklin, a book-
keeper-secretary, was working. She was alone in the two-
room office. The intruder, apparently unmasked, stood
about three feet from her with a gun drawn and demanded
money. She told him there was only a small amount in
petty cash and showed him where the petty cash box was
(in the file cabinet to her right). He threw a paper bag
on her desk and told her to put the cash inside it. She then
showed him that the petty cash box contained checks and
practically no cash. He then went to another file cabinet,
opened it, and questioned her about the papers in it. He
proceeded into the adjoining room and demanded that she
open the safe located there. She told him that only her em-
ployer could open it, and "he kept saying to open it and I
[Mrs. Macklin] kept saying I couldn't." At some point she
ran out into the hall, and he followed her and shot her.
About ten to fifteen minutes elapsed between the time the
intruder entered and the time she ran into the hallway.
Mrs. Macklin testified that "[t]he lights were on and there
are two windows, also. The lighting was excellent." She
was taken to a hospital, and while in the emergency ward
she gave the police a description of her assailant and
picked out the picture of the defendant from pictures
shown to her.

The defendant was arrested in a café a few blocks from
the scene of the robbery at about five or ten minutes after
2:00 P.M. that same day. That morning the defendant had
been defaulted in an unrelated matter in the Central Dis-
trict Court of Worcester, and officers who participated in
the arrest testified that they were aware of the issuance of
a "default warrant," the basis upon which the arrest was
made. The arresting officers seized a gun from the defend-
ant which Mrs. Macklin identified at the trial as the gun

the defendant had carried. A ballistics expert testified that a spent bullet recovered from the wall of the hallway in which Mrs. Macklin had been shot was fired from that gun.

The defendant's three contentions in his brief are variations of a claim that he is entitled to a new trial because his counsel was inadequate in that (and only in that) he failed to move to suppress (see Rule 101B of the Superior Court, as amended in 1971) Mrs. Macklin's in-court identification, her out-of-court identification of the defendant from photographs while she was in the emergency ward, and the gun seized from the defendant. The test for the adequacy of counsel has been established in *Commonwealth* v. *Saferian,* 366 Mass. 89, 96 (1974). We are required to undertake "a discerning examination and appraisal of the specific circumstances of the given case to see whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence."[1] See *Delle Chiaie* v. *Commonwealth,* 367 Mass. 527, 536-537 (1975); *Connolly* v. *Commonwealth,* 366 Mass. 435, 437 (1974). Applying this test to the record in this case (as the defendant properly asks us to do) we cannot say that the record evidences such a likelihood that a motion to

---

[1] Also, the court in the *Saferian* case concluded (at 1277): "Agreeing that one's surface impression that a trial was fair or that guilt was established is not the end of an inquiry ... we should still not be carried to the opposite extreme of holding that assistance was inadequate when counsel did not conform in some respect to an ideal model of how counsel should collate evidence or otherwise conduct himself. On the latter view, judgments would be under constant attack ...." See *Commonwealth* v. *Stone,* 366 Mass. 506, 516 (1974) ("This argument [that counsel was inadequate] does not commend itself to us, as we have had previous occasion to state, unless it is solidly based"); *Delle Chiaie* v. *Commonwealth,* 367 Mass. 527, 539 (1975) ("We will not second guess tactical decisions of counsel where there is no showing of prejudice"); *Commonwealth* v. *Jackson,* 3 Mass. App. Ct. 288, 293-294 (1975); *Commonwealth* v. *Dukes,* 3 Mass. App. Ct. 770 (1975).

suppress would have been successful as to make the failure to file it an indicium of inadequacy. See *Commonwealth* v. *McGrath,* 361 Mass. 431, 438-439 (1972); *Commonwealth* v. *LeBlanc,* 364 Mass. 1, 11-12 (1973); *Commonwealth* v. *Scott,* 2 Mass. App. Ct. 763, 766 (1975) cases in which the Supreme Judicial Court and this court have rejected claims of ineffective assistance of counsel who had failed to file motions to suppress.[2] An assessment of the record is particularly difficult where, as here, the claim is made on direct appeal rather than by the customary motion for a new trial or, in some circumstances, by a writ of error. See *Delle Chiaie* v. *Commonwealth,* 367 Mass. at 529-530. In such postjudgment proceedings we would have been aided by the judge's findings, perhaps reflecting (as is usual) additional testimony, including that of original counsel. See *Commonwealth* v. *LeBlanc,* 364 Mass. at 11, and fn. 8. *Commonwealth* v. *Coleman,* 366 Mass. 705, 710-711 (1975). Cf. *Commonwealth* v. *Libby,* 358 Mass. 617, 621-622 (1971); *Commonwealth* v. *Bernier,* 359 Mass. 13, 20 (1971); *Commonwealth* v. *McGrath,* 361 Mass. at 436 (1972).

The defendant's argument that the photographic identification in the emergency ward might have been unreasonable and unduly suggestive is purely speculative. We do not have the photographs used in the identification and it is not clear how many were shown to her in the hospital. The record contains no other evidence of the circumstances of that identification. Further, it appears from the record that the robbery lasted ten to fifteen minutes in a

---

[2] These cases should answer the suggestion in the defendant's argument that the failure to file a motion to suppress is ipso facto an indication of inadequacy. Any such rule would encourage bringing suppression motions merely to lay the foundation for a defense to claims of ineffective assistance of counsel. See *Commonwealth* v. *LeBlanc,* 364 Mass. at 14 ("Nor need counsel advance defences for which he can find no evidential support in order to fend against later charges of incompetence or ineffectiveness"). Suppression motions are, of course, highly valuable tools for the lawyer defending a criminal case, but their use as "defensive practice" would suggest an adversary relationship between client and attorney, which is undesirable at the least.

well lighted office and that the victim and the robber were in close proximity for much of that time. A finding was warranted that the in-court identification was based on the original episode itself, unaffected by the photographic identification in the emergency ward.

The defendant's complaint that his trial attorney should have sought to suppress the gun as the result of an illegal arrest is likewise without merit. On this record it appears that such a motion would almost certainly have been futile. An assistant clerk of the Central District Court of Worcester testified that a "default warrant" had been issued for the defendant's arrest, and the arresting officers testified without contradiction that the arrest was made pursuant to the "default warrant." General Laws c. 276, §§ 36, 71. See *Commonwealth* v. *Stuyvesant Ins. Co.* 366 Mass. 611, 613 (1975). Probable cause as a basis for the arrest was obviously immaterial.

*Judgments affirmed.*